**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

| | |
|---|---|
| JOSIY VIERA and JAMES GOSSELIN, | **CIV. NO. 15-5430** |
| Plaintiffs, | |
| v. | |
| THE CITY OF NEW YORK and RICHMOND UNIVERSITY MEDICAL CENTER, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

------------------------------------------------------------

Plaintiffs, JOSIY VIERA and JAMES GOSSELIN, by and through their undersigned counsel, EISENBERG & BAUM, LLP, as and for their Complaint against Defendants, THE CITY OF NEW YORK and RICHMOND UNIVERSITY MEDICAL CENTER, hereby allege as follows:

## PRELIMINARY STATEMENT

1.      Josiy Viera is a deaf individual who communicates primarily in American Sign Language ("ASL"), which was her expressed, preferred, and most effective means of communication. James Gosselin, a hearing individual, is Ms. Viera's fiancé. Ms. Viera and Mr. Gosselin live together at their shared home in Staten Island, where they raise eight children together.

2.      On or about December 1, 2014, Mr. Gosselin slipped and fell while holding his infant son, A.G., injuring both himself and A.G. They sought treatment at Richmond University Medical Center, accompanied by Ms. Viera. During their treatment, Richmond University Medical

Center failed to provide an ASL interpreter for Ms. Viera, and thereby failed to ensure effective communication with her in a medical setting, by ignoring or denying her requests for accommodation on an ongoing basis during her son A.G.'s medical treatment.

3.      Following this incident, various employees of the New York City Administration for Children's Services (ACS) visited Ms. Viera and Mr. Gosselin's home. Except for one instance, ACS never brought an ASL interpreter during these meetings, despite requests from both Ms. Viera and Mr. Gosselin. Ms. Viera was unable to communicate with the ACS agents, and felt helpless and terrified that her children would be taken from her. ACS later closed its investigation, having found no evidence of abuse or neglect.

4.      Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for direct doctor-patient communication through a qualified sign language interpreter. Only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even the most adept lip-readers, in an ideal one-to-one situation, have been found to understand only 26% of what is said. Despite this, Defendants often forced Ms. Viera to communicate using this unreliable and ineffective method, instead of properly accommodating Ms. Viera's disability.

5.      Reliance by deaf individuals upon family members to interpret has been found to be unwise and dangerous, insofar as family members are generally not trained to act as interpreters, particularly in medical and legal settings. Family members often are untrained in accurately and precisely interpreting and conveying the full and complete content of medical or legal communications to the deaf individual. In addition, family members are generally too personally and emotionally involved with the deaf patient to act impartially with the emotional detachment that is necessary of qualified sign language interpreters, particularly in medical or legal settings

and communications. Despite this, Defendants often attempted to force James Gosselin or Ms. Viera's children to interpret instead of properly accommodating Ms. Viera's disability.

6.      Plaintiffs bring this lawsuit to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' services. Plaintiffs seek declaratory, injunctive, and equitable relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the New York Human Rights Law ("NYHRL"), N.Y. Exec. L. § 290 et seq.; the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et. seq.; and other state and common law causes of action.

## THE PARTIES

7.      Plaintiff JOSIY VIERA brings this action and is an individual residing at 279 Nicholas Avenue #2, Staten Island, New York 10302. Ms. Viera is profoundly deaf, primarily communicates in American Sign Language, and is substantially limited in the major life activities of hearing and speaking within the meaning of federal, state, and local anti-discrimination laws.

8.      Plaintiff JAMES GOSSELIN brings this action and is an individual residing at 279 Nicholas Avenue #2, Staten Island, New York 10302. Mr. Gosselin is a hearing individual.

9.      Plaintiffs JOSIY VIERA and JAMES GOSSELIN are engaged to be married, live together in a shared dwelling, and raise eight children together.

10.     Defendant, THE CITY OF NEW YORK, is a duly incorporated municipality of the State of New York, whose seat of government was and still is located at City Hall Park, New York,

New York. The New York City Administration for Children's Services (ACS), at all times hereinafter mentioned, is a governmental agency of THE CITY OF NEW YORK, with a principal place of business at 150 William St, New York, New York 10038. As an agency of the City of New York, it is a public entity subject to the requirements of Title II of the ADA and Section 504 of the Rehabilitation Act, and a public accommodation subject to the requirements of the New York Human Rights Law, and the New York City Human Rights Law.

11.     Defendant, RICHMOND UNVERSITY MEDICAL CENTER (RUMC), at all times hereinafter mentioned, is a not-for-profit corporation incorporated and doing business in the State of New York, with a principal place of business at 355 Bard Avenue, Staten Island, New York 10310. Defendant owns, operates, and/or controls Richmond University Medical Center, a hospital facility at the same address. Defendant RUMC is a place of public accommodation under federal, state, and local antidiscrimination laws and is a recipient of federal financial assistance. Thus, it is subject to the requirements of Title III of the ADA, Section 504 of the Rehabilitation Act, the New York Human Rights Law, and the New York City Human Rights Law.

## JURISDICTION & VENUE

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiffs' claims arising under federal law, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiffs' claims arising under state and local law.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a Defendant resides within the jurisdiction of this district, and a substantial part of the events that give rise to the claims occurred in this district.

## CONDITION PRECEDENT

14.     To the extent required under § 50-e of the New York General Municipal Law, Plaintiffs served a Notice of Claim against Defendant The City of New York on February 23, 2015.

4

15.    Pursuant to the requirements of N.Y. C.P.L.R. § 217(a), this Complaint is timely because it is filed within one year and ninety days of the alleged unlawful incidents.

16.    Therefore, Plaintiffs have satisfied all conditions precedent to the filing of this Complaint.

## STATEMENT OF FACTS

17.    Josiy Viera is profoundly deaf and communicates primarily in American Sign Language (ASL).

18.    James Gosselin is a hearing individual who communicates primarily in English and has a rudimentary ability to communicate in American Sign Language.

19.    Ms. Viera and Mr. Gosselin are engaged to each other, and live together in Staten Island, where they raise eight children together.

20.    Among their children is the infant A.G., who is the biological child of Mr. Gosselin and Ms. Viera.

21.    Two of the children are profoundly deaf, and the rest are hearing.

22.    During the evening on December 1, 2014, Mr. Gosselin was picking up A.G. into his arms when he became suddenly lightheaded, causing him to fall.

23.    The fall caused Mr. Gosselin to experience pain in his hip and shoulder on the side upon which he fell.

24.    A.G. did not seem to be injured or in pain after the fall.

25.    After the fall, Mr. Gosselin sought treatment for himself and for A.G. at Richmond University Medical Center (RUMC).

26.    Ms. Viera drove Mr. Gosselin and A.G. to RUMC, and remained with them while they waited over two hours in the waiting room of the emergency department.

27.     Mr. Gosselin and A.G. were then taken to separate rooms for examination and treatment, and Ms. Viera remained with A.G.

28.     Mr. Gosselin informed RUMC staff that Ms. Viera was deaf and required an ASL interpreter.

29.     RUMC did not provide an interpreter or any other form of auxiliary aid or service to communicate with Ms. Viera.

30.     Ms. Viera was made to hold A.G. while A.G. was being examined, despite having no understanding of what was going on.

31.     RUMC staff made no attempt to explain A.G.'s situation to Josiy Viera.

32.     An initial x-ray of A.G.'s leg demonstrated what appeared to be a hairline fracture.

33.     At one point, an RUMC physician manipulated A.G.'s leg in such a way that A.G. began to scream in pain.

34.     A subsequent x-ray demonstrated a major fracture in A.G.'s leg, far worse and more painful than the original hairline fracture.

35.     From his separate examination room, Mr. Gosselin heard A.G. screaming, and dragged himself through the hallway to see what was going on.

36.     Upon information and belief, during Mr. Gosselin's brief conversation with RUMC staff in the room in which A.G. was being examined, a staff member, speaking about Josiy Viera, stated: "We didn't know she was a mute."

37.     At approximately 4:00am on December 2, 2014, Mr. Gosselin and A.G. were transferred to New York Presbyterian Hospital.

38.     While at New York Presbyterian, one Ms. Sophia Curtis, an employee of the New York City Administration for Children's Services (ACS) questioned Mr. Gosselin and Ms. Viera

about the events leading to Mr. Gosselin and A.G.'s hospitalization.

39.     Mr. Gosselin explained that Ms. Viera was deaf and could not communicate without an ASL interpreter.

40.     Ms. Curtis explained that no interpreter would be provided, as she was conducting an "emergency interview."

41.     That evening, Ms. Curtis came to Mr. Gosselin and Ms. Viera's home without an ASL interpreter to examine the premises and to interview Ms. Viera, and the children.

42.     Ms. Viera could not understand what was going on, nor could the deaf children.

43.     The next day, December 3, 2014, Tanya Jones, another ACS employee, came to Ms. Viera and Mr. Gosselin's home, this time with an ASL interpreter.

44.     Ms. Viera was able to understand and communicate with the aid of the interpreter.

45.     However, after this date, Tanya Jones proceeded to make repeated, almost weekly visits to Ms. Viera and Mr. Gosselin's home, most of which were unannounced.

46.     During none of these unannounced visits did the ACS employee bring an ASL interpreter or any other auxiliary aid or service.

47.     Consequently, Ms. Viera and the deaf children could not understand what was happening during these purported inspections.

48.     Mr. Gosselin was not home during some of these visits, and even when he was, he was not able to interpret for Ms. Viera, nor would it have been prudent for him to do so under the circumstances.

49.     Ms. Viera lived in a constant state of fear and anxiety, as she did not know when ACS would seek to enter her home, or whether ACS planned to take away her children.

50.     Ms. Viera's inability to communicate with ACS employees while ACS was

investigating her home caused her extreme stress and psychological damage.

51.     Upon information and belief, around the end of February or the beginning of March, 2015, Ms. Viera and Mr. Gosselin received notification from ACS stating that ACS had closed its investigation, having found no evidence of abuse or neglect on the part of Ms. Viera or Mr. Gosselin.

52.     Defendants knew or should have known of their obligations under the ADA, Section 504, the NYHRL, and the NYCHRL to provide accommodations to individuals with disabilities, including individuals who are deaf or hard of hearing, and to develop policies to promote compliance with these statutes.

53.     Defendants knew or should have known that their actions and/or inactions created an unreasonable risk of causing Ms. Viera and Mr. Gosselin greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person or companion would be expected to experience.

54.     As a result of Defendants' failure to ensure effective communication with Ms. Viera, she received services that were objectively substandard and that were inferior to those provided to persons who are hearing, and was subjected to discriminatory treatment because of her disability.

55.     As a result of the actions and/or inactions of Defendants and their employees and agents, Mr. Gosselin was denied the same opportunities that are readily and routinely provided to hearing persons to participate in decisions regarding family matters.

56.     Defendants' wrongful and intentional discrimination against Ms. Viera and Mr. Gosselin on the basis of disability is reflected by the Defendants' failure to train employees and agents and promulgate policies of non-discrimination against deaf individuals.

57.     Defendants discriminated against Ms. Viera and Mr. Gosselin with deliberate

8

indifference to Ms. Viera's communication needs, causing both Ms. Viera and Mr. Gosselin to endure humiliation, fear, anxiety, and emotional distress.

## COUNT 1: VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT AGAINST DEFENDANT THE CITY OF NEW YORK

58.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

59.     At all times relevant to this action, Title II of the ADA, 42 U.S.C. § 12131, et seq. has been in full force and effect and has applied to The City of New York's conduct.

60.     At all times relevant to this action, Josiy Viera had been substantially limited in the major life activities of hearing and speaking, and has therefore been an individual with a disability within the meaning of 42 U.S.C. § 12102(2).

61.     The City of New York is a local government within the meaning of 42 U.S.C. § 12131(A).

62.     ACS is a department, agency, special purpose district, or other instrumentality of a local government within the meaning of 42 U.S.C. § 12131(1)(B).

63.     The City of New York is vicariously liable for the actions of its employees and agents under a theory of *respondeat superior*, and is directly liable for its failure to train employees and agents and its failure to implement or modify policies to ensure compliance with the ADA.

64.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

65.     Title II of the ADA permits associational claims by extending relief to "any person alleging discrimination" in violation thereof. 42 U.S.C. § 12133.

9

66.     As set forth above, The City of New York discriminated against Josiy Viera and James Gosselin on the basis of Josiy Viera's disability, in violation of the ADA.

67.     As set forth above, absent injunctive relief there is a clear risk that The City of New York's actions will recur with Plaintiffs and/or additional deaf persons or companions.

68.     Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss sustained as a result of The City of New York's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 12133.

69.     Plaintiffs are further entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to 42 U.S.C. § 12133 and/or common law.

## COUNT 2: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT AGAINST DEFENDANT RICHMOND UNIVERSITY MEDICAL CENTER

70.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

71.     At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq. has been in full force and effect and has applied to Defendant RUMC's conduct.

72.     At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to Defendant RUMC's conduct.

73.     At all times relevant to this action, Josiy Viera had been substantially limited in the major life activities of hearing and speaking, and has therefore been an individual with a disability within the meaning of 42 U.S.C. § 12102(2).

74.     Defendant RUMC owns, leases, and/or operates a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

75.     Title III of the ADA provides that "[n]o individual shall be discriminated against

10

on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

76.    Title III of the ADA further provides that "[i]t shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

77.    Federal regulations implementing Title III of the ADA provide that a public accommodation may not require an individual with a disability to bring another individual to interpret for him or her, and shall not rely on an adult or minor child accompanying an individual with a disability to interpret or facilitate communication, except in an emergency. 28 C.F.R. § 36.303(c).

78.    As set forth above, Defendant RUMC discriminated against Josiy Viera and James Gosselin on the basis of Josiy Viera's disability, in violation of the ADA.

79.    As set forth above, absent injunctive relief there is a clear risk that Defendant RUMC's actions will recur with Plaintiffs and/or additional deaf patients or companions.

80.    Plaintiffs are therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## COUNT 3: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT AGAINST BOTH DEFENDANTS

81.    Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

82.    At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 has been in full force and effect and has applied to the Defendants' conduct.

83. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to the Defendants' conduct.

84. At all times relevant to this action, Josiy Viera has had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of 29 U.S.C. § 705(9).

85. At all times relevant to this action, Defendants received federal financial assistance, including Medicaid reimbursements or other funds, and were therefore programs or activities receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

86. Pursuant to Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

87. Pursuant to Federal regulations implementing Section 504 of the Rehabilitation Act, programs or activities receiving Federal financial assistance "must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2).

88. The Rehabilitation Act permits associational claims by extending relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

89. As set forth above, Defendants discriminated against Josiy Viera and James Gosselin on the basis of Josiy Viera's disability, in violation of the Rehabilitation Act.

90. As set forth above, absent injunctive relief there is a clear risk that Defendants'

actions will recur with Plaintiffs and/or other deaf persons or companions.

91.      Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

92.      Plaintiffs are further entitled to an award of attorneys' fees, costs, and disbursements pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## COUNT 4: VIOLATIONS OF THE NEW YORK HUMAN RIGHTS LAW AGAINST BOTH DEFENDANTS

93.      Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

94.      At all times relevant to this action, the New York Human Rights Law, Article 15 of the New York Executive Law § 290 et seq., has been in full force and effect and has applied to the Defendants' conduct.

95.      At all times relevant to this action, Josiy Viera has had substantial impairments to the major life activities of hearing and speaking, and has therefore been a qualified individual with a disability within the meaning of N.Y. Exec. L. § 292(21).

96.      At all times relevant to this action, Defendants have operated public accommodations within the meaning of N.Y. Exec. L. § 292(9).

97.      Pursuant to N.Y. Exec. L. § 296(2)(a), "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . to the effect that any of the accommodations, advantages, facilities and privileges of any such place hall be refused, withheld from or denied to

any person on account of . . . disability . . . or that the patronage or custom thereat of any person of or purporting to . . . having a disability is unwelcome, objectionable or not acceptable, desired or solicited."

98.     Pursuant to N.Y. Exec. L. § 296(2)(c), discrimination includes "refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities."

99.     The NYHRL permits associational claims by extending relief to "any person claiming to be aggrieved" by discrimination in violation thereof. N.Y. Exec. L. § 297(9).

100.     As set forth above, Defendants discriminated against Josiy Viera and James Gosselin on the basis of Josiy Viera's disability, in violation of the NYHRL.

101.     As set forth above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiffs and/or additional deaf persons or companions.

102.     Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss sustained as a result of Defendants' discriminatory conduct as hereinbefore alleged pursuant to N.Y. Exec. L. § 297(9).

## COUNT 5: VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW AGAINST BOTH DEFENDANTS

103.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

104.     At all times relevant to this action, the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 et. seq., has been in full force and effect and has applied to Defendants' conduct.

105.     At all times relevant to this action, Josiy Viera has had substantial impairment to the major life activities of hearing and speaking, and has therefore been a qualified individual with

14

a disability within the meaning of N.Y.C. Admin. Code § 8-102(16).

106.    At all times relevant to this action, Defendants have operated public accommodations within the meaning of N.Y.C. Admin. Code §  8-102(9).

107.    Under the NYCHRL, public accommodations may not "refuse, withhold from or deny to such [disabled] person any of the accommodations, advantages, facilities or privileges thereof."  N.Y.C. Admin. Code §  8-107(4)(a).

108.    Additionally, under the NYCHRL, public accommodations "shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

109.    The NYCHRL permits associational claims, stating: "The provisions of this section set forth as unlawful discriminatory practices shall be construed to prohibit such discrimination against a person because of the actual or perceived disability of a person with whom such person has a known relationship or association."  N.Y.C. Admin. Code §  8-107(20).

110.    As set forth above, Defendants discriminated against Plaintiffs on the basis of Josiy Viera's disability, in violation of the NYCHRL.

111.    As set forth above, absent injunctive relief there is a clear risk that Defendants' actions will continue to reoccur with Plaintiffs and/or other deaf persons or companions.

112.    Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss sustained as a result of Defendants' discriminatory conduct as hereinbefore alleged, pursuant to N.Y.C. Admin. Code § 8-502(a).

113.    Plaintiffs are further entitled to an award of punitive damages against Defendant RUMC pursuant to N.Y.C. Admin. Code § 8-502(a).

114.    Plaintiffs are further entitled to an award of attorneys' fees, costs, and disbursements pursuant to N.Y.C. Admin. Code § 8-502(g).

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant the following relief:

a.    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Titles II and III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the New York Human Rights Law, and the New York City Human Rights Law;

b.    Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;

c.    Order Defendants:

i.    to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiffs or other deaf or hard of hearing individuals or companions by failing to provide effective communication;

ii.    to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an onsite interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

iii.    To develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting

explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iv.    to develop, implement, promulgate, and comply with a policy to ensure, in the event the Defendants utilize a Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v.    to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing patients are able to communicate through the most appropriate method under the circumstances;

vi.    to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

vii.    to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Rehabilitation Act, NYHRL, and NYCHRL;

viii.    to train all employees, staff, and other agents on a regular basis about Defendants' policies regarding how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when

17

reasonably requested by deaf or hard of hearing persons;

d.  Award to Plaintiff:

     i.    Compensatory damages pursuant to Title II of the ADA, Section 504 of the Rehabilitation Act, the NYHRL, and the NYCHRL;

     ii.    Punitive damages pursuant to the NYCHRL;

     iii.    Reasonable costs and attorneys' fees pursuant to the ADA, Section 504 of the Rehabilitation Act, and the NYCHRL;

     iv.    Interest on all amounts at the highest rates and from the earliest dates allowed by law;

     v.    Any and all other relief that this Court finds necessary and appropriate.

## JURY DEMAND

Plaintiff demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

EISENBERG & BAUM, LLP

By:

Eric M. Baum, Esq. (EB-5493)
ebaum@EandBlaw.com

Andrew Rozynski, Esq. (AR-2870)
arozynski@EandBlaw.com

Attorneys for Plaintiffs
Office and Post Office Address
24 Union Square East, Fourth Floor
New York, NY  10003
(212) 353-8700