UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSIY VIERA and JAMES GOSSELIN, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF NEW YORK and RICHMOND UNIVERSITY MEDICAL CENTER, <br><br> Defendants. | 15 Civ. 5430 (PGG) |

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

 

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
T. (212) 637-2725
F. (212) 637-2702

ELIZABETH TULIS
Assistant United States Attorney
   *Of Counsel*

The United States, by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this Statement of Interest, pursuant to 28 U.S.C. § 517, regarding the scope of the "imminent threat exception" to the general rule that public accommodations may not rely on an adult companion of an individual with a disability to facilitate communication, set forth in 28 C.F.R. § 36.303(c)(3), one of the regulations implementing Title III of the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12181, *et seq.*, and the burden of proof with respect to this exception.

## PRELIMINARY STATEMENT

Plaintiffs Josiy Viera and James Gosselin allege, *inter alia*, that defendant Richmond University Medical Center ("RUMC") violated Title III of the ADA when it failed to provide an interpreter or other auxiliary aid or service to communicate with Ms. Viera, who is deaf, during the treatment of Ms. Viera's son, A.G., in the RUMC emergency room. Pursuant to applicable regulations, a public accommodation, such as RUMC, must "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). Further, generally, "[a] public accommodation shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication." *Id.* § 36.303(c)(3). RUMC has moved for summary judgment with respect to the ADA claim against it, arguing, in relevant part, that it was permitted to rely on Ms. Viera's partner, Mr. Gosselin, to facilitate communication because the situation involving A.G. was an "emergency," and because, notwithstanding the general prohibition on such a practice, applicable regulations allow a public accommodation to rely on an adult accompanying an individual with a disability to interpret or facilitate communication in "an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available." 28

C.F.R. § 36.303(c)(3)(i). To the Government's knowledge, this regulation has not been the subject of judicial interpretation.

RUMC, in its memorandum of law, suggests an impermissibly broad construction of § 36.303's imminent threat exception to the general prohibition on hospitals' reliance on the companions of individuals with disabilities to interpret or facilitate communication. Accordingly, the United States files this Statement of Interest (1) to clarify the scope of the imminent threat exception, and (2) to correct the suggestion, in RUMC's memorandum of law, that it is a plaintiff's burden to establish that the imminent threat exception does not apply. *See* 28 U.S.C. § 517 (the Attorney General may send any officer of the Department of Justice "to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States"). The United States Department of Justice ("DOJ") has primary responsibility for enforcing the ADA, and in particular is responsible for issuance of regulations to carry out the provisions of Title III of the ADA applicable to this case. *See* 42 U.S.C. § 12186(b). The United States therefore has a particularly strong interest in ensuring the correct interpretation and application of the ADA and its implementing regulations in this context.

## FACTUAL AND PROCEDURAL BACKGROUND

The United States does not take a position on the factual disputes at issue in RUMC's motion for summary judgment. Here, we briefly outline the relevant allegations in the complaint and the relevant procedural history only as background for the legal issues discussed below.

As alleged in the complaint, plaintiff Josiy Viera is a deaf individual who communicates primarily in American Sign Language ("ASL"). (Dkt. No. 1, ¶ 1). Plaintiff James Gosselin, Ms. Viera's fiancé, is a hearing individual, and resides with Ms. Viera. (*Id.*). On or about December 1, 2014, Mr. Gosselin slipped and fell while holding his and Ms. Viera's infant son, A.G. (*Id.*

2

¶ 2). Accompanied by Ms. Viera, Mr. Gosselin and A.G. sought treatment at RUMC. (*Id.*). Mr. Gosselin informed RUMC staff that Ms. Viera was deaf and required an ASL interpreter. (*Id.* ¶ 28). However, RUMC did not provide an interpreter or any other form of auxiliary aid or service to communicate with Ms. Viera. (*Id.* ¶ 29). Rather, RUMC asserts in its Rule 56.1 Statement that Mr. Gosselin conveyed information from RUMC medical staff about A.G.'s condition and treatment to Ms. Viera by using the Notepad function on his cellphone and by signing. (*See* RUMC 56.1 Statement, ¶¶ 290-297). An initial x-ray of A.G.'s leg showed a hairline fracture (Dkt. No. 1, ¶ 32), and a subsequent x-ray, after a physician manipulated A.G.'s leg, demonstrated a major fracture (*id.* ¶¶ 33-34). In the early hours of December 2, 2014, Mr. Gosselin and A.G. were transferred to New York Presbyterian Hospital. (*Id.* ¶ 37).

On July 13, 2015, plaintiffs filed a complaint that included, among other claims, a claim against RUMC under Title III of the ADA. (*See id.* ¶¶ 70-80).

Following discovery, RUMC moved for summary judgment, arguing, *inter alia*, that it was entitled to judgment as a matter of law with respect to plaintiffs' claim under Title III of the ADA. (RUMC Mem. at 16-20). RUMC argues that it is entitled to summary judgment on this claim because, among other reasons, it was appropriate for RUMC to rely on interpretation and facilitation of communication by Mr. Gosselin because it was an emergency situation. (*Id.* at 18-19). Specifically, RUMC argues that "A.G.'s Emergency Department admission qualifies under the [emergency] exception [at 28 C.F.R. § 36.303(c)(3)(i)] since it was determined to be an emergency situation by the medical professionals at RUMC" (*id.* at 19). RUMC further argues that "even without medical expertise, it can be concluded that a trauma involving a fall on an infant by a person weighing 280lbs could involve an imminent threat to the safety of the infant." (*Id.*). RUMC suggests that engaging in "retrospective analysis of the medical providers'

3

decisions and actions" would be to "second guess the decisions of medical providers in determining what is an imminent threat to patient safety." (*Id.*) RUMC suggests that "the burden of establishing that this incident does not fall within the emergency exception is on plaintiff." (*Id.*).

## DISCUSSION

### I. Statutory and Regulatory Background

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The term "public accommodation," as used in the statute, includes hospitals. *Id.* § 12181(7)(F).

In enacting the ADA, Congress found that individuals with disabilities continually encounter discrimination in critical areas such as health services, including, *inter alia*, outright intentional exclusion, communication barriers, and the failure to make modifications to existing practices. *Id.* § 12101(a)(3), (a)(5). Title III of the ADA was enacted as a broad remedy to this pervasive discrimination. *See id.* § 12101(b). The statute defines discrimination in public accommodations to include, *inter alia*,

> a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

*Id.* § 12182(b)(2)(A)(iii).

4

Pursuant to Congress's directive, *see id.* § 12186(b), DOJ has promulgated regulations to implement Title III's broad nondiscrimination mandate with respect to covered entities. One of these regulations, titled "Auxiliary aids and services," specifies that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). Although "the ultimate decision as to what measures to take rests with the public accommodation," the public accommodation "should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication." *Id.* § 36.303(c)(1)(ii). The chosen method must "result[] in effective communication." *Id.* Moreover, to "be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.* The regulation further provides that "[a] public accommodation shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication," except in two circumstances:

> (i) In an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available; or
>
> (ii) Where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult for such assistance is appropriate under the circumstances.

*Id.* § 36.303(c)(3).

DOJ has issued section-by-section guidance regarding the regulations implementing Title III of the ADA. *See* 28 C.F.R., pt. 36, App. A. The guidance emphasizes that the exception for emergencies at § 36.303(c)(3) "is narrowly tailored to emergencies involving an imminent threat

5

to the safety or welfare of individuals or the public." 28 C.F.R., pt. 36, App. A at 773. The guidance notes that "[a]rguably, all visits to an emergency room are by definition emergencies." *Id.* Accordingly, the language "involving an imminent threat to the safety or welfare of individuals or the public" is meant to make clear that the exception is "not intended to apply to typical and foreseeable emergency situations that are part of the normal operations of these institutions." *Id.* "As such, a public accommodation may rely on an accompanying individual to interpret or facilitate communication under the § 36.303(c)(3)-(4) imminent threat exception only where there is a true emergency, *i.e.*, where any delay in providing immediate services to the individual could have life-altering or life-ending consequences." *Id.* Because DOJ is the agency directed by Congress to issue regulations implementing Title III of the ADA, *see* 42 U.S.C. § 12186(b), to render technical assistance explaining the responsibilities of covered individuals and institutions, *see id.* § 12206(c), and to enforce Title III in court, *see id.* § 12188(b), its guidance regarding interpretation of these regulations is entitled to deference. *See Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) (citing *Chevron, U.S.A. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

## II. Analysis

### A. The Imminent Threat Exception Must Be Construed Narrowly

As noted above, RUMC argues that, following A.G.'s admission to the emergency room, it was entitled under 28 C.F.R. § 36.303(c)(3)(i) to rely on Mr. Gosselin to facilitate communication with Ms. Viera about A.G. because of the nature of A.G.'s injury and because medical professionals determined that it was an "emergency situation." (RUMC Mem. at 19). Although RUMC quotes the applicable regulation, its analysis appears to assume that the imminent threat exception—which RUMC refers to as the "emergency" exception (*id.*)—is

broader in scope than the plain language of the regulation, or the applicable DOJ guidance, supports. In fact, as set forth in the DOJ guidance discussed above, the imminent threat exception should be narrowly construed. In particular, RUMC's argument elides three limitations on application of the exception: (1) not all emergency room visits will necessarily constitute emergencies involving an imminent threat to the safety or welfare of an individual or the public; (2) the imminent threat exception applies only so long as the emergency in fact exists; and (3) where an interpreter is needed, the imminent threat exception does not relieve a public accommodation of providing an interpreter where an interpreter is in fact available.

First, the mere fact that a particular situation entails treatment in an emergency room, or involvement by emergency personnel, does not mean that the exception is applicable. Rather, as the regulation plainly states, the regulation applies only "in an emergency *involving an imminent threat* to the safety or welfare of an individual or the public." 28 C.F.R. § 36.303(c)(3)(i) (emphasis added); *see Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir. 2002) ("In interpreting an administrative regulation, as in interpreting a statute, we must begin by examining the language of the provision at issue."); *Forest Watch v. U.S. Forest Serv.*, 410 F.3d 115, 117 (2d Cir. 2005) ("The plain meaning of language in a regulation governs unless that meaning would lead to absurd results." (quotation marks omitted)). Indeed, as explained in the applicable DOJ guidance, to the extent a situation is "typical and foreseeable" within the "normal operations" of an emergency room, it would not qualify for the imminent threat exception. 28 C.F.R., pt. 36, App. A, at 773.

Relatedly, under the plain language of the statute, and as a necessary corollary of the rule that the imminent threat exception is to be construed narrowly, *see id.*, the exception only applies so long as the emergency in fact exists. The regulation specifies that a public accommodation

may rely on an adult companion to interpret or facilitate communication "*[i]n* an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available." 28 C.F.R. § 36.303(c)(3)(i) (emphasis added). Thus, even if a hospital is initially presented with a situation involving an imminent threat to the safety or welfare of an individual, once that threat abates, the hospital's obligation to provide an interpreter—and not to rely on a companion accompanying the individual with a disability—revives. In other words, by its plain meaning, the exception at issue would not allow RUMC to rely on Ms. Viera's companion to interpret or facilitate communication once A.G.'s situation no longer constituted an emergency involving an imminent threat to his safety or welfare.

Finally, by its plain language, the imminent threat exception never relieves a public accommodation of the responsibility of providing an interpreter where an interpreter is in fact available. Specifically, the regulation provides that the public accommodation may rely on the individual with a disability's adult companion for interpretation or facilitation of communication in a sufficiently severe emergency only "where there is no interpreter available." 28 C.F.R. § 36.303(c)(3)(i). In other words, even in a bona fide emergency situation, a public accommodation may not rely on an adult companion to facilitate communication unless and only so long as no interpreter is available. Thus, even if an interpreter is not available prior to commencement of treatment, such that reliance on an accompanying adult is permissible at that time, a hospital has an obligation to provide an interpreter once available.

While RUMC argues that medical professionals should not be forced to "weigh delaying medical care until an interpreter is provided" and facing possible medical malpractice claims against providing immediate medical intervention that might trigger hospital liability under the ADA (RUMC Mem. at 19), the regulatory framework does not present the legal conundrum

posited by RUMC. Rather, it appropriately balances the rights and responsibilities of covered entities and of individuals with disabilities that are implicated when unanticipated emergencies arise. And with respect to a hospital—where serious emergencies are both anticipated and routine—the exception cannot be read to obviate altogether the hospital's obligation to provide interpreters or other auxiliary aids or services in order to facilitate effective communication for individuals with disabilities.

### B.  It Is a Defendant's Burden To Establish that the Exception Applies

Because the imminent threat exception defines a particular instance in which hospitals and other public accommodations are not bound by the general rule that prohibits them from relying on an adult accompanying an individual with a disability to interpret or facilitate communication, an argument that the exception applies is in the nature of an affirmative defense. Indeed, RUMC's answer to the complaint lists as an affirmative defense that the proper steps were taken by RUMC "to comply with the statutory provisions . . . in light of the emergency nature of the situation and the presence of [Mr. Gosselin]." (Dkt. No. 16, ¶ 25). Contrary to RUMC's contention (*see* RUMC Mem. at 19), it is the defendant's burden to establish this affirmative defense, rather than the plaintiff's burden to show that the exception does not apply. *See, e.g.*, *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995) (once plaintiff has satisfied prima facie burden with respect to ADA reasonable accommodation claim, "the defendant's burden of persuading the factfinder that the plaintiff's proposed accommodation is unreasonable merges, in effect, with its burden of showing, as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship").

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court consider this Statement of Interest in this litigation.

Dated: New York, New York
August 10, 2016

                                              Respectfully submitted,

                                              PREET BHARARA
                                              United States Attorney for the
                                              Southern District of New York

                       By:   /s/ Elizabeth Tulis
                                              ELIZABETH TULIS
                                              Assistant United States Attorney
                                              86 Chambers Street, Third Floor
                                              New York, New York 10007
                                              Tel. (212) 637-2725
                                              Fax (212) 637-2702
                                              elizabeth.tulis@usdoj.gov