UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSIY VIERA and JAMES GOSSELIN,

                    Plaintiffs,

             -against-

THE CITY OF NEW YORK and
RICHMOND UNIVERSITY MEDICAL
CENTER,

                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/15/17

**ORDER**

15 Civ. 5430 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        On July 5, 2016, Plaintiff James Gosselin filed a motion to voluntarily dismiss his claims against the City of New York (the "City") and Richmond University Medical Center with prejudice, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. (Dkt. No. 63)[1] Defendants do not object to Gosselin's withdrawal of his claims, but they seek various conditions on the dismissal, including Plaintiff Josiy Viera's stipulation to a number of facts; the exclusion of certain testimony from Plaintiffs' expert that may have been influenced by Gosselin; Gosselin's response to two outstanding requests to admit; and an award of attorney's fees. (Dkt. Nos. 55, 66, 67)

        On June 24, 2016, this Court referred the parties' dispute to Magistrate Judge Henry Pitman for a Report and Recommendation ("R & R"). (Dkt. Nos. 60, 105) On January 13, 2017, Judge Pitman issued an R & R recommending that Gosselin's claims be dismissed with prejudice, subject to certain conditions. (Dkt. No. 106) No objections have been filed to the R & R. For the reasons stated below, this Court adopts the R & R in its entirety.

---

[1] The page numbers in this Order refer to the designated page numbers in this District's Electronic Case Filing system.

## BACKGROUND

Plaintiff Josiy Viera is deaf, and she communicates primarily through American Sign Language ("ASL"). (Cmplt. (Dkt. No. 1) ¶ 1) Plaintiff James Gosselin is Viera's fiancé and resides with her and their eight children. Gosselin has normal hearing. (Id.) On July 13, 2015, Viera and Gosselin filed a complaint alleging the following facts:

On or about December 1, 2014, Gosselin slipped and fell while holding the couple's infant son, A.G., injuring both himself and A.G. (Id. ¶ 2) Gosselin, Viera, and A.G. went to Richmond University Medical Center ("RUMC") for treatment. RUMC did not provide an ASL interpreter for Viera, and ignored or denied Viera's requests for ASL accommodation on an ongoing basis during A.G.'s medical treatment. (Id.) RUMC diagnosed A.G. with a broken leg and referred him to New York-Presbyterian Hospital for further treatment. (Id. ¶ 37)

After this incident, New York City Administration for Children's Services ("ACS") personnel visited Viera and Gosselin's home. (Id. ¶ 3) Except on one occasion, ACS employees never brought an ASL interpreter, despite Viera and Gosselin's requests to do so. (Id.)

In this action, Plaintiffs allege that RUMC and ACS's failure to provide an ASL interpreter violates the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq.; and the New York City Human Rights Law, N.Y. Admin. Code §§ 8-101 et seq. (Id. ¶¶ 58-114)

On February 29, 2016, Defendants deposed Gosselin. Gosselin testified that he served in the United States Army for ten years; that he was assigned to Echo Company of the 75th U.S. Army Rangers Special Forces unit headquartered in Fort Benning, Georgia; that he

2

served three tours of duty in Iraq, two tours of duty in Afghanistan, and one tour of duty in Egypt; that he served as a combat medic and backup scout sniper; that he received a Silver Star for "bravery and heroism" in Fallujah, Iraq, in connection with saving another soldier's life; that he received the Purple Heart for wounds he had sustained while on active duty; that he was shot 14 times in both legs while on active duty; that his leg bones were fractured as a result of his wounds, and that two metal rods were inserted in his legs along with four screws and two pins; and that he was in a wheelchair for a year as a result of his injuries. (See R & R (Dkt. No. 106) at 3-5; Gosselin Dep. at 11-14, 20-23)

Gosselin's account of valor and honor in service of his country appears to be false. The National Personnel Records Center reports that Gosselin's military service records show that he was never on active duty, other than for training. (See id. at 5; May 13, 2016 RUMC Ltr. (Dkt. No. 50) at 7) X-rays taken in connection with Gosselin's December 1, 2014 visit to RUMC's emergency room show no evidence of the injuries or medical treatment he described. (See R & R (Dkt. No. 106) at 5; May 13, 2016 RUMC Ltr. (Dkt. No. 50) at 2)

On May 9, 2016, Defendants sent Gosselin two requests to admit concerning his military service records. (See May 13, 2016 RUMC Ltr. (Dkt. No. 50) at 2, 5) This Court directed Gosselin to respond to the Requests for Admissions by June 8, 2016. (See Order (Dkt. No. 52) at 1)

In a June 8, 2016 letter, Plaintiff's counsel notified this Court that Gosselin intended to voluntarily withdraw his claims in this lawsuit with prejudice. (See June 8, 2016 Pltf. Ltr. (Dkt. No. 54) at 1) On July 5, 2016, Gosselin moved to withdraw his claims, with

prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2).[2] (See Dkt. No. 63) In connection with Gosselin's motion, Viera agreed that she would not call Gosselin as a witness or rely on Gosselin's testimony, either at trial or in connection with any motion. (See R & R (Dkt. No. 106) at 5; June 14, 2016 Pltf. Ltr. (Dkt. No. 59) at 1) Defendants do not object to Gosselin's withdrawal of his claims with prejudice or to Viera's agreement not to use Gosselin's testimony. (See R & R (Dkt. No. 106) at 5-6; RUMC Br. (Dkt. No. 66) at 1) However, Defendants argue that the dismissal of Gosselin's claims should be subject to certain conditions. (See RUMC Br. (Dkt. No. 66); Lively Decl. (Dkt. No. 67) ¶¶ 4-8; July 21, 2016 City Ltr. (Dkt. No. 71) at 1-6; July 15, 2016 Tr. (Dkt. No. 113) at 4) Plaintiffs have accepted most of Defendants' conditions, but several remain in dispute.

First, Defendants seek stipulations as to certain matters addressed in Gosselin's deposition and 50-h hearing testimony.[3] Second, Defendants seek to exclude or re-depose Plaintiffs' expert, Dr. Judy Shepard-Kegl, because portions of her report and testimony may have been influenced by information Gosselin provided to her. Third, Defendants seek to compel Gosselin to respond to two requests to admit, notwithstanding his Fifth Amendment objection. Finally, Defendants seek an award of attorney's fees for work related to Gosselin's allegedly false testimony. (See R & R (Dkt. No. 106) at 6)

On January 13, 2017, Judge Pitman issued an R & R recommending that Gosselin's motion to voluntarily dismiss his claims with prejudice be granted, subject to certain

---

[2] Under Rule 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).

[3] A "50-h hearing" is an examination provided for under New York General Municipal Law § 50-h. See N.Y. Gen. Mun. Law § 50-h(1) ("Whenever a notice of claim is filed against a . . . county . . . the . . . county . . . shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made, . . . which examination shall be upon oral questions unless the parties otherwise stipulate. . . .").

4

conditions. (See id. at 23-24) Judge Pitman informed the parties that they had fourteen days from service of the R & R to file any objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, and that "failure to object within fourteen (14) days w[ould] result in a waiver of objections and w[ould] preclude appellate review." (Id. at 24) (emphasis omitted) No objections to the R & R were filed.

## DISCUSSION

### I.  STANDARD OF REVIEW

Because the parties did not file any objection to Judge Pitman's R & R, they have waived their right to de novo review by this Court. See Thomas v. Arn, 474 U.S. 140, 147-48 (1985); see also Razo v. Astrue, No. 04 Civ. 1348 (PAC) (DF), 2008 WL 2971670, at *2 ("For uncontested portions of the R & R, the court need only review the face of the record for clear error." (citing Wilds v. United Parcel Serv., 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003))); Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision." (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam))); Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 174 (2d Cir. 2000) ("Failure to timely object to a report generally waives any further judicial review of the findings contained in the report.").

### II.  STIPULATED FACTS

RUMC and Plaintiff Viera have reached agreement concerning twenty matters Gosselin addressed at his deposition. (See R & R (Dkt. No. 106) at 6-8, 11; July 29, 2016 Conf. Tr. (Dkt. No. 111) at 5-6) The City and Plaintiff Viera have reached agreement as to nine matters

5

about which Gosselin testified. (See R & R (Dkt. No. 106) at 8-10, 12; July 29, 2016 Conf. Tr. (Dkt. No. 111) at 9-11) The Court addresses below the two remaining proposed stipulated facts that are in dispute.

### A. The City's Proposed Stipulated Fact No. 2

The City's proposed Stipulated Fact No. 2 reads as follows:

> After Mr. Gosselin informed Ms. Gayle-Curtis that Ms. Viera was deaf during an interview on December 2, 2014 at New York Presbyterian Hospital, Ms. Gayle-Curtis asked if Ms. Viera can read and write, to which Mr. Gosselin responded that she can (Gosselin 50-h Tr. 46:17-20).

(R & R (Dkt. No. 106) at 8-9; July 21, 2016 City Ltr. (Dkt. No. 71) at 2)

Viera objects to this proposed stipulated fact, primarily on the ground that it does not fully capture Gosselin's testimony concerning his exchange with Gayle-Curtis, an ACS employee. (See R & R (Dkt. No. 106) at 12; July 29, 2016 Conf. Tr. (Dkt. No. 111) at 9-10) According to Viera, Gosselin also told Gayle-Curtis that Viera "needed an interpreter and . . . won't be able to understand her." (July 29, 2016 Conf. Tr. (Dkt. No. 111) at 7)

Judge Pitman recommends that the City's proposed Stipulated Fact No. 2 be amended to "incorporate[] the potentially relevant portion of Gosselin's 50-h testimony word for word":

> After Mr. Gosselin informed Ms. Gayle-Curtis that Ms. Viera was deaf during an interview on December 2, 2014 at New York Presbyterian Hospital, Ms. Gayle-Curtis asked if Ms. Viera can read and write, to which Mr. Gosselin responded ["]yeah, but sign language -- I mean deaf people and hearing people, the words are different. [Ms. Gayle-Curtis was] like what do you mean. So I said they don't use apostrophes, they don't use stuff like that, they don't leave words out.["]

(R & R (Dkt. No. 106) at 12 (quoting Gosselin 50-h Tr. at 46))

Judge Pitman's amendment – to which no objection has been filed – more accurately conveys Gosselin's testimony concerning Viera's ability to read and write.

6

Accordingly, this Court accepts the City's proposed Stipulated Fact No. 2, as amended by Judge Pitman.

### B. The City's Proposed Stipulated Fact No. 11

The City's proposed Stipulated Fact No. 11 reads as follows:

> Mr. Gosselin estimated that Ms. Gayle-Curtis spoke to his and Ms. Viera's children on December 2, 2014 for "just a few minutes."

(Id. at 10 (quoting Gosselin Dep. at 160:9); see also July 21, 2016 City Ltr. (Dkt. No. 71) at 2)

Judge Pitman recommends that the City's proposed Stipulated Fact No. 11 be amended as follows to more closely reflect Gosselin's actual testimony:

> Mr. Gosselin estimated that Ms. Gayle-Curtis tried to speak to his and Ms. Viera's children on December 2, 2014 for just a few minutes.

(R & R (Dkt. No. 106) at 13; see July 29, 2016 Conf. Tr. (Dkt. No. 111) at 16)

At a July 29, 2016 conference, Plaintiff objected to this proposed stipulated fact, because "Mr. Gosselin [was not] in a place to accurately testify [as] to how long [Ms. Gayle-Curtis] spoke to the children." (July 29, 2016 Conf. Tr. (Dkt. No. 111) at 16)

Gosselin testified that on December 2, 2014, he was interviewed by Gayle-Curtis at New York-Presbyterian Hospital. During the interview, Gayle-Curtis told Gosselin that she intended to conduct a home visit that evening. (Gosselin Dep. at 137-39, 146) Gosselin subsequently called Viera at the couple's home, and she put the phone—which was in the living room – on speaker. (Id. at 157, 159; July 29, 2016 Conf. Tr. (Dkt. No. 111) at 13) Gosselin overheard Gayle-Curtis attempting to speak to the couple's children, but the children did not respond. (Gosselin Dep. at 158-59) Gosselin testified that Gayle-Curtis "asked me if I would have the kids talk to her because none of the kids were saying nothing to her." (Id. at 158) Gosselin responded that Gayle-Curtis had told him to "butt out." (Id.) Gosselin overheard

7

Gayle-Curtis "trying to ask the kids what happened. Does anybody know what happened[?]" (Id. at 159) However, "[n]one of them said a word." (Id. at 160)

Gosselin's testimony indicates that Gayle-Curtis's efforts to speak with the children were unsuccessful. Accordingly, Judge Pitman's amended version of proposed Stipulated Fact No. 11 more accurately reflects Gosselin's testimony. Given that Gosselin was listening by telephone to the encounter between Gayle-Curtis and the children, he could testify as to what he overheard. Accordingly, this Court accepts the City's proposed Stipulated Fact No. 11, as amended by Judge Pitman.

### III. EXPERT TESTIMONY

Plaintiff retained Dr. Judy Shepard-Kegl to offer an opinion concerning Viera's communication abilities. (See R & R (Dkt. No. 106) at 14) Defendants seek to exclude or re-depose Dr. Shepard-Kegl, arguing that Gosselin "may have exaggerated certain facts or understated his own abilities to communicate [with Viera] in ASL," and that Dr. Shepard-Kegl may have relied on information supplied by Gosselin in reaching the conclusions set forth in her report. (See id. at 16) Defendants also express concern that Gosselin's testimony might indirectly be presented to the fact-finder through the expert. (See id.; RUMC Br. (Dkt. No. 66) at 5; July 29, 2016 Conf. Tr. (Dkt. No. 111) at 30-31)

Judge Pitman concluded that Defendants' application to either preclude Dr. Shepard-Kegl's testimony or to re-open her deposition "should be denied[,] because defendants failed to demonstrate how the revelations concerning Gosselin's deposition testimony [about his military record] called Dr. Shepard-Kegl's conclusions into question or justified further inquiry." (R & R (Dkt. No. 106) at 16)

8

Judge Pitman noted that Gosselin's alleged military record played no role in Dr. Shepard-Kegl's evaluation of his ASL abilities. Moreover, Defendants had the same incentive and ability to cross-examine Dr. Shepard-Kegl with regard to Gosselin's description of his ASL skills and other matters before they discovered that Gosselin might have misrepresented his military record. (See id.) The discovery of Gosselin's alleged perjury about his military record "does not alter the bases on which defendants could have cross-examined Dr. Shepard-Kegl." (Id. at 16-17) This Court finds no error in Judge Pitman's analysis.

Judge Pitman also concluded, however, that the following two statements in Dr. Shepard-Kegl's report are based on information supplied by Gosselin:

> [B]oth the hospital and ACS often attempted to force James Gosselin or Ms. Viera's children to interpret instead of properly accommodating Ms. Viera's disability. In the case of using Mr. Gosselin as an interpreter, we also see the wholly inappropriate use of a family member who, until the ACS investigation determined no evidence of abuse of neglect [sic], was also under investigation for abuse and neglect.
>
> . . . .
>
> Near weekly surprise visits were held, but none where Ms. Viera had any communication access except via her husband or, in the absence of her husband, one of her young children. None of these individuals were competent to interpret.

(Id.)

Given that Viera has agreed not to rely on Gosselin's testimony for any purpose, (see June 14, 2016 Pltf. Ltr. (Dkt. No. 59) at 1), it would be inconsistent to permit Gosselin's statements to be cited in motion practice or to be presented to the fact-finder through the expert. Accordingly, to the extent that the paragraphs quoted above rely exclusively on information supplied by Gosselin, they will not be considered in motion practice or admissible at trial. Moreover, Dr. Shepard-Kegl will not be permitted to testify as to the information presented above to the extent that Gosselin is the singular source of the information, nor will she be

9

permitted to rely on any such statements of Gosselin in offering opinions at trial. Viera's counsel is directed to submit a letter by March 23, 2017, stating whether the Court's ruling has caused Dr. Shepard-Kegl to revise the opinions set forth in her report in any way. If so, Viera's counsel will report how those opinions have been modified.

## IV. REQUESTS FOR ADMISSIONS

Defendants also seek to condition the dismissal of Gosselin's claims on him responding to the following requests to admit:

1. The genuineness of the attached FOIA response from the National Personnel Records Center dated April 29, 2016 documenting that James Gosselin never performed active duty for the United States Army other than for training purposes.

2. The fact that James Gosselin never performed active duty for the United States Army other than for training purposes.

(R & R (Dkt. No. 106) at 18; Request For Admissions (Dkt. No. 50) at 5)

Gosselin has refused to respond to Defendants' requests to admit, citing his Fifth Amendment privilege against self-incrimination. (See R & R (Dkt. No. 106) at 18; June 8, 2016 Pltf. Ltr. (Dkt. No. 54) at 1; June 9, 2016 RUMC Ltr. (Dkt. No. 55) at 1) Defendants argue that Gosselin waived his Fifth Amendment privilege when he testified about his military record at his deposition. (See R & R (Dkt. No. 106) at 18; RUMC Br. (Dkt. No. 66) at 5)

Judge Pitman recommends that this Court deny Defendants' application to require Gosselin to respond to the requests to admit, noting that once Gosselin's claims are dismissed – and given Viera's agreement not to rely on his testimony – the fact that he may have lied about his military record is not relevant to any issue in this case. (See R & R (Dkt. No. 106) at 18-19) Judge Pitman also rejects Defendants' argument that Gosselin waived his Fifth Amendment privilege, stating that this argument "is based on flawed logic." (Id. at 19)

10

This Court sees no clear error in either finding. Once Gosselin's claims are dismissed, and given Viera's agreement not to rely on his testimony for any purpose, it is irrelevant – as to the instant case – whether Gosselin lied in testifying about his military record.

Similarly, Defendants have not demonstrated that Judge Pitman's analysis of the Fifth Amendment issue is incorrect. Having testified under oath at his deposition concerning his alleged military record, agreeing to the accuracy of requests to admit that contradict that testimony could tend to incriminate Gosselin by suggesting that he committed perjury at his deposition. See 18 U.S.C. § 1621; In re Corrugated Container Antitrust Litig., 644 F.2d 70, 75 n.7 (2d Cir. 1981) ("A witness is entitled to claim the Fifth Amendment privilege if it might reveal perjury in a prior proceeding.") (citing cases); United States v. Housand, 550 F.2d 818, 823 (2d Cir. 1977) ("The Fifth Amendment privilege question arises when the witness refuses to answer on the ground that his second version of the event may result in his prosecution for perjury. . . . If . . . the original testimony may be . . . perjurious, the witness is in peril if he now tells the truth. Even if we assume that a perjury count based merely on the contradiction (18 U.S.C. s 1623(c)) would not stand up, because the original perjury would not be admissible until it is shown to be false, the giving of truthful testimony on the second occasion could surely trigger investigation of whether the original testimony was false, and whether that could be proved by extrinsic evidence. This is a reasonable cause for apprehension, and supports the claim of privilege.") Defendants' argument that Gosselin has waived his Fifth Amendment privilege is misguided.

Having testified as he did at his deposition, the risk of self-incrimination arises from requiring Gosselin to respond to requests to admit that present a risk of contradicting his earlier testimony. See In re Corrugated Container, 644 F.2d at 75 n.7; Housand, 550 F.2d at 823.

11

Dismissal of Gosselin's claims will not be conditioned on his responding to the outstanding requests to admit.[4]

## V.    ATTORNEY'S FEE AWARD

Defendants seek an attorney's fee award for legal fees associated with addressing Gosselin's allegedly false testimony. (See RUMC Br. (Dkt. No. 66) at 6; Lively Decl. (Dkt. No. 67) ¶ 8) Judge Pitman concluded that under Colombrito v. Kelly, 764 F. 2d 122 (2d Cir. 1985), Defendants are not entitled to an attorney's fee award. (See R & R (Dkt. No. 106) at 20)

### A.    Applicable Law

In Colombrito, the Second Circuit found that "[f]ee awards are often made when a plaintiff dismisses a suit without prejudice under Rule 41(a)(2)." Colombrito, 764 F.2d at 133 (emphasis in original). "The purpose of such awards is generally to reimburse the defendant for the litigation costs incurred, in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him." Id. (citing cases). "In contrast, when a lawsuit is voluntarily dismissed with prejudice under Fed. R. Civ. P. 41(a)(2), attorney's fees have almost never been awarded." Id. at 133-34 (emphasis in original). "Conceivably such an award might be . . . appropriate [however,] . . . if a litigant had made a practice of repeatedly bringing potentially meritorious claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system." Id. at 134-35.

"The Second Circuit has further held that the showing necessary for an award of attorneys' fees in connection with a voluntary dismissal with prejudice under Rule 41(a)(2) is

---

[4] To the extent that Dkt. No. 52 requires Gosselin to respond to the outstanding requests to admit, it is hereby vacated.

extremely high." Beer v. John Hancock Life Ins. Co., 211 F.R.D. 67 (N.D.N.Y. 2002) (citing Colombrito, 764 F.2d at 134-35). "[A] court examines a range of factors to determine whether an attorneys' fees award is appropriate, such as frivolousness, motivation, objective unreasonableness, and deterrence." Ritchie v. Gano, 754 F. Supp. 2d 605, 609 (S.D.N.Y. 2010) (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 535 (1994)).

"[U]nder the American Rule, absent statutory authorization or an established contrary exception, each party bears its own attorney's fees. The only pertinent exception for present purposes is the court's inherent authority to award fees when a party litigates frivolously or in bad faith." Colombrito, 764 F.2d at 133 (internal citations omitted). "The bad faith exception permits an award [of fees] upon a showing that the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons. Neither meritlessness alone, nor improper motives alone, will suffice." Id. (internal quotations and citations omitted).

### B. Analysis

There is no evidence here that Gosselin has "made a practice of repeatedly bringing potentially meritorious claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system." Id. at 134-35; see R & R (Dkt. No. 106) at 21-22. There is likewise no evidence that Gosselin was motivated by malice in filing this lawsuit, or that his claims against Defendants are frivolous or were made in bad faith.

Defendants' argument that Gosselin's perjury renders his claims frivolous (see July 29, 2016 Conf. Tr. (Dkt. No. 111) at 48) is not persuasive. As Judge Pitman correctly concluded, the subject of Gosselin's alleged perjury – his military record – bears no relation to

the merits of this action, in which Plaintiffs claim that RUMC and the City violated the Americans with Disabilities Act and other federal and state statutes by failing to provide Viera with an ASL interpreter. Viera has continued to pursue her claims notwithstanding Gosselin's motion to voluntarily dismiss. Indeed, she has filed a motion for summary judgment. (See Dkt. No. 75) In sum, Gosselin's motion to voluntary dismiss his claims does not – given the unique circumstances of this case – give rise to an inference that his claims are frivolous. See Colombrito, 764 F.2d at 130.

Defendants' request for an attorney's fee award will be denied.

## CONCLUSION

Having reviewed Judge Pitman's R & R, this Court is satisfied that the R & R contains no clear error. See Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985). Accordingly, this Court adopts Judge Pitman's R & R in its entirety. Plaintiff Gosselin's claims are hereby dismissed with prejudice pursuant to Fed. R. Civ. P. 41(a)(2) on the following conditions: (1) Plaintiff Viera will not offer any deposition testimony, affidavit, or other evidence from Plaintiff Gosselin to support her claims, whether in motion practice or at trial; (2) the stipulations of fact set forth in Appendix A of Judge Pitman's R & R will be deemed true in all subsequent proceedings in this matter, without prejudice to Plaintiff Viera's right to object to the relevance or materiality of any stipulated fact; and (3) the statements set forth in Appendix B of Judge Pitman's R & R are not to be cited in motion practice or introduced or relied on at trial – whether in connection with Dr. Shepard-Kegl or any other witness – to the extent that Plaintiff Gosselin is the sole source for the information contained in those statements.

Plaintiff Viera's counsel will submit a letter to this Court by March 23, 2017, stating whether the Court's ruling on this point has caused Dr. Shepard-Kegl to revise the

opinions set forth in her report in any way. If so, counsel will explain forth how the expert's opinions have been revised.

Defendants' application for an order requiring Plaintiff Gosselin to respond to the two outstanding requests to admit, and for an award of attorney's fees, is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 64) and to terminate James Gosselin as a plaintiff in this action.

Dated: New York, New York  
       March 15, 2017

SO ORDERED.

_____  
Paul G. Gardephe  
United States District Judge